Filed 7/22/25  In re I.W. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re I.W., a Person Coming Under the Juvenile Court Law. | 2d Crim. No. B341282 (Super. Ct. No. IJ0265B) (Los Angeles County) |
| THE PEOPLE, Plaintiff and Respondent, v. I.W., Defendant and Appellant. | |

I.W. appeals an order of the juvenile court declaring him a ward pursuant to Welfare and Institutions Code section 602 and ordering him home on probation.  This appeal concerns his claim that the court erred by denying his motion to suppress evidence of a firearm found during his street encounter with Los Angeles police officers.  We reject his argument and affirm.

*FACTUAL AND PROCEDURAL HISTORY*

On July 5, 2024, the prosecutor filed a petition alleging that I.W. concealed an unregistered firearm on his person.  (Pen.

Code, § 25400, subd. (a)(2).) I.W. denied the allegation and filed a motion to suppress evidence of the firearm asserting that the search was warrantless and lacked reasonable cause. On September 25, 2024, the juvenile court held a hearing and received the testimony of Los Angeles Police Officer Kevin Santizo as well as the body camera videos of the encounter and arrest. The court then denied the motion. Following the hearing, the court sustained the allegation of the wardship petition, declared the allegation to be a felony and I.W. to be a ward of the court, and ordered I.W. home on probation.

This evidence was presented at the hearing:

In the late afternoon of July 7, 2024, Gang Enforcement Police Officers Santizo and Farias were patrolling 102nd Street in Los Angeles. They stopped their marked patrol vehicle at 1317 West 102nd Street, a location known for people to congregate, loiter, and drink. In the past, the area had experienced shootings.

Four boys stood in that location, including I.W. Santizo spoke with them ("chit-chatting") while Farias canvassed the area. Farias then spoke with them while Santizo looked into a truck bed in a nearby front yard. Farias asked the group, "Anything on you, bro?" and "Let me see." The four boys pulled up their shirts and exposed their bellies and waistbands. Farias then asked I.W.: "Anything in your backpack, bro?" I.W. responded, "No." Farias then asked, "No pistol?" I.W. opened his backpack.

During the interaction, the boys were laughing, texting, joking with the officers, and standing wherever they chose. I.W. and the others were free to leave. None of the boys were

2

detained, restrained, or handcuffed. Their paths were not blocked by the patrol car or the officers.

Within approximately one minute, Santizo then saw what appeared to be the butt of a firearm inside I.W.'s waistband and between his legs. Santizo was familiar with firearms based upon his police officer training and experience. He pat-searched the object and it felt like a firearm. Santizo then ordered I.W. to turn around and place his hands behind his back. Farias handcuffed I.W. and Santizo, concerned for officer safety, seized the firearm. The officers arrested I.W. and the other boys left. The officers did not pat down the other boys.

The firearm was in working order. It had a live round in the chamber and five rounds in the magazine.

I.W. appeals and contends that the juvenile court erred by denying the suppression motion because the encounter was an unconstitutional detention and not consensual.

*DISCUSSION*

I.W. argues that the police officers did not have reasonable suspicion necessary to detain him prior to discovery of the firearm. He relies upon *United States v. Jones* (4th Cir. 2012) 678 F.3d 293, 301-303 (following defendant into private driveway, blocking his exit, and requesting him to lift his shirt together is a show of authority).

In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if supported by substantial evidence. (*People v. Flores* (2024) 15 Cal.5th 1032, 1043; *In re T.F.-G.* (2023) 94 Cal.App.5th 893, 904.) We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable pursuant to the Fourth Amendment. (*Ibid.*) In so

3

doing, we do not consider each fact in isolation, but the totality of the circumstances. (*Flores*, at p. 1043.)

Police contacts with individuals fall into three broad categories: 1) consensual encounters that result in no restraint of liberty; 2) detentions, which are seizures of the individual that are strictly limited in duration, scope, and purpose; and 3) formal arrests. (*In re T.F.-G.*, *supra*, 94 Cal.App.5th 893, 903.) Unlike consensual encounters, a detention is a seizure for which a reasonable suspicion is required. (*Ibid.*) A reasonable suspicion requires a particularized and objective basis for suspecting the particular person stopped was engaged in criminal activity. (*People v. Brown* (2015) 61 Cal.4th 968, 981.)

A person is seized by the police when the officer by means of physical force or a show of authority restrains the person's freedom of movement through intentional means. (*Brendlin v. California* (2007) 551 U.S. 249, 254 [168 L.Ed.2d 132, 138]; *In re T.F.-G.*, *supra*, 94 Cal.App.5th 893, 903.) In distinguishing a detention from a consensual encounter, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have informed a reasonable person that he was not free to leave or decline the officer's requests. (*People v. Brown*, *supra*, 61 Cal.4th 968, 974 ["An officer may approach a person in a public place and ask if the person is willing to answer questions. If the person voluntarily answers, those responses, and the officer's observations, are admissible in a criminal prosecution"]; *T.F.-G.* at p. 903.)

The key distinction between a consensual encounter and a detention is that a consensual encounter requires no justification but detentions do. (*In re L.G.* (2025) 108 Cal.App.5th 818, 821.) If an officer's show of authority restrains a person's liberty, then

that officer has seized that person and must justify the detention. (*Ibid.*)  We consider the totality of the circumstances to determine whether police actions have turned a consensual encounter into a detention.  (*People v. Tacardon* (2022) 14 Cal.5th 235, 241; *L.G.*, at p. 821.)  Relevant circumstances include presence of multiple police officers, an officer's display of a weapon, use of a siren or overhead lights, physically touching the person, use of a patrol car to block movement or a commanding tone of voice. (*Tacardon,* at pp. 241-242.)

The juvenile court did not err by denying the suppression motion.  The totality of circumstances shows that the encounter between the police officer and the four boys was consensual.  The officers did not block the sidewalk or the driveway near where the boys were standing.  (*People v. Tacardon*, *supra*, 14 Cal.5th 235, 247 [no detention where defendant's vehicle was not blocked from driving away].)  The officers also did not draw weapons, issue commands, approach rapidly, or surround the boys.  The boys were texting and joking with the officers.  Contacting the boys and asking questions in a public place does not constitute coercive police conduct that would lead a reasonable person to believe that he or she was not free to leave.  (*People v. Flores*, *supra*, 15 Cal.5th 1032, 1043.)

During the consensual encounter, Santizo noticed – in plain view – what appeared to be the outline of a firearm in I.W.'s pants.  (*Lorenzana v. Superior Court* (1973) 9 Cal.3d 626, 634 [search of contraband in plain view not unconstitutional].)  At that point, Santizo had reasonable cause to pat down and detain I.W. for reasons of officer safety and the safety of others nearby. (*People v. McDaniel* (2021) 12 Cal.5th 97, 131 [bulge in pocket resembling shape of gun justifies pat-down search].)

I.W. asserts that his race is a factor in determining whether he felt free to leave the encounter.  He points out that being a Black teenager is not a sufficient reason to detain.  The Fourth Amendment test is an objective one, however, that does not change based upon racial or other classifications.

*DISPOSITION*

The order is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

BALTODANO, J.

CODY, J.

J. Christopher Smith, Judge

Superior Court County of Los Angeles

_____


Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.